Andrias, J.,
dissents in a memorandum as follows: Plaintiff alleges that she tripped over a shunt (a temporary electrical cable) that defendant Con Edison placed across the sidewalk in front of defendant owners’ townhouse in order to restore electric power to the building. Although photographs taken by plaintiff a couple of days after the accident showed that there were black and orange covers over the shunt, plaintiff testified at her deposition that the covers were not there when she tripped.
The owners moved for summary judgment dismissing the complaint and cross claims against them on the ground that they could not be held liable under a “special use” theory because they did not have control over the shunt. They also asserted that even if they had control, they could not be held liable because a sidewalk shunt does not fall within the scope of the “Sidewalk Law” (Administrative Code of City of NY § 7-210), which, with certain exceptions, shifts responsibility for sidewalk maintenance and liability for injuries arising from a *521 defective sidewalk from the City to the owner of the real property which abuts the defective sidewalk.
Supreme Court denied the owners’ motion. The majority would affirm on the ground that the Sidewalk Law applies and a question of facts exists whether the shunt constituted a special use of the sidewalk that created a duty of care on the part of the owners. Because I believe that the owners established that they may not be held liable under a special use theory of liability, I dissent and would grant their motion for summary judgment.
“[W]here the abutting landowner derives a special benefit from that [public property] unrelated to the public use, the person obtaining the benefit is required to maintain the used property in a reasonably safe condition to avoid injury to others” (Kaufman v Silver, 90 NY2d 204, 207 [1997] [internal quotation marks omitted and emphasis deleted]). “Imposition of the duty to repair or maintain a use located on adjacent property is necessarily premised, however, upon the existence of the abutting land occupier’s access to and ability to exercise control over the special use structure or installation” (id,.).
Pursuant to 34 RCNY 2-20 (a) (2), “[o]nly public utilities, public benefit corporations, City agencies or licensed and insured contractors shall be permitted to install, repair, use or work within three (3) feet of any type of City electrical equipment or non-City electrical equipment attached to City Property.” Pursuant to 34 RCNY 2-20 (a) (7), “[n]o person shall break, deface, remove, or interfere with any lamp, gas, communication or electrical apparatus, or any part thereof, which shall be hung or fixed in any street or public place . . . except as authorized by the Department [of Transportation].”
By virtue of these rules, Con Edison, the utility performing the emergency repair work to restore power to the townhouse, had exclusive maintenance responsibility over its shunt. The owners had no control over the shunt and were bound by 34 RCNY 2-20 not to interfere with it. Lacking control, the owners may not be held liable for any special use of the shunt that may have caused plaintiffs fall (see Noia v Maselli, 45 AD3d 746 [2d Dept 2007]). Although the Sidewalk Law generally imposes liability for injuries resulting from negligent sidewalk repair on the abutting property owners, it is inapplicable as against the owners because 34 RCNY 2-20 mandates that liability be placed on another party (see Lewis v City of New York, 89 AD3d 410 [1st Dept 2011]; Hurley v Related Mgt. Co., 74 AD3d 648 [1st Dept 2010]).
Positing that “electrical equipment” and “electrical appara *522 tus” are interchangeable, the majority finds that it is uncertain whether 34 RCNY 2-20 would relieve the owners of liability since the owners offered no support for their theory that street shunts constitute “electrical equipment.” However, the majority interprets the terms “electrical equipment” and “electrical apparatus” too narrowly.
34 RCNY 2-01 defines a “shunt” as a “temporary electrical cable or conduit that has been installed between two points to divert current from one path, which is no longer in use, to another path.” The rule defines a “street shunt” as “a shunt that runs from a street light/lamppost or utility access cover along a roadway and/or sidewalk to a property or other street light/ lamppost.” “City Electrical Equipment” means “city property to which electrical connections can be made, including but not limited to, electrical devices, wood poles and metal street light/ lampposts” (34 RCNY 2-01). “Non-city Electrical Equipment” means “property, not owned by the City, which is attached to City Property and to which electrical connections can be made, including but not limited to, electrical devices and wood poles” (id.) City property includes but is not limited to “roadways, sidewalks, street furniture and electrical equipment” (id.). “Electrical apparatus” is not defined.
Con Edison’s witness explained that a shunt is made up of wires that feed power to a house from a central feeder location. It is undisputed that Con Edison installed the shunt two days before the accident, to restore electrical power to the premises on an emergency basis, after it received a call from the owners’ tenant stating that the townhouse had lost electric power, which also left the tenant without heat or hot water. The cause of the problem was not within the townhouse, and the shunt, which ran from an external power source in the adjacent street, across the sidewalk, and into the basement of the townhouse, was part of the “non-city electrical equipment” used to restore power. The placement of the shunt across the sidewalk as part of an emergency repair also falls well within the ambit of an “electrical apparatus, or any part thereof . . . hung or fixed in any street or public place” (34 RCNY 2-20 [a] [7] [emphasis added]).
While recognizing that ordinary homeowners should not be required to tamper with shunts or move them, the majority states that “that was not required here, where plaintiff is only alleging that a protective board or other device covering up the shunts was required,” and that “nothing in the rules . . . prohibited the property owners from taking steps to warn pedestrians about the hazards posed by the shunts.” However, pursuant to 34 RCNY 2-20 (b) (7), “[t]he sidewalk areas over *523 which the shunt runs and all wires shall be protected and ramped with a reflective covering.” 34 RCNY 2-05 (d) (17) requires that “[a] 11 equipment hoses, cables, or wires placed on the sidewalk while in use shall be bridged and protected by warning signs and/or lights.” Thus, the rules clearly place the obligations to cover the shunt and warn the public on the utility that installs the shunt. While 34 RCNY 2-20 (a) (7) requires that “[a]ll instances of damaged gas, communication or electrical equipment shall be reported to the 311 Government Services & Information for New York City telephone number and/or the contact telephone number on any applicable permits,” there is no allegation here that the shunt was damaged.
I am cognizant that in Eliassian v Consolidated Edison Co. of N.Y. (300 AD2d 51 [1st Dept 2002]) and Cook v Consolidated Edison Co. of NY, Inc. (51 AD3d 447 [1st Dept 2008]) this Court found a triable issue of fact whether the placement of shunt boards constituted a special use of the sidewalk by the owner giving rise to a duty on the owner’s part to maintain the provisional sidewalk structure. However, neither decision addressed the requirement that the owner have the ability to exercise control over the installation (see Kaufman, 90 NY2d at 207-208), or 34 RCNY 2-20, which went into effect October 27, 2010. Further, in Cook the shunt boards were in place for nearly six months, and the denial of summary judgment was also predicated on triable issues of fact whether the tenant had constructive notice of a recurring defective condition which was routinely left unaddressed (51 AD3d at 448).